UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LISA A. HAUSER,                                    Case No. 1:12-cv-796
       Plaintiff,                              Dlott, J.
                                                   Litkovitz, M.J.
    vs


COMMISSIONER OF                                    **REPORT AND**
SOCIAL SECURITY,                                   **RECOMMENDATION**
       Defendant.

     Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply

memorandum (Doc. 16).

## I. Procedural Background

     Plaintiff filed an application for DIB in February 2010, alleging disability since January 4,

2010, due to fibromyalgia, degenerative disc disease, arthritis and bulging discs. Plaintiff's

application was denied initially and upon reconsideration. Plaintiff, through counsel, requested

and was granted a *de novo* hearing before administrative law judge (ALJ) Curt Marceille.

Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On April 27,

2012, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for

review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson* v. *Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since January 4, 2010, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: Degenerative disc disease (DDD); fibromyalgia; osteoarthritis; and obesity (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), which involves lifting no more than 10 pounds at a time except she cannot climb ladders, ropes or scaffolds. She can perform no more than occasional stooping. She cannot work with hazards (heights/dangerous moving machinery/commercial driving) due to sedative effect from the medication. She should avoid concentrated exposure to extreme heat or cold. She is limited to simple, routine, and repetitive work due to reported side effects from medications.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

---

[1]Plaintiff has past relevant work as an office manager and human resources manager. (Tr. 27, 155).

3

7. The [plaintiff] was born [in]... 1969 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 4, 2010, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 18-28) (footnotes omitted).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 1,300 unskilled, sedentary jobs in the regional economy, citing as examples of such jobs: addresser, telephone clerk, and document preparer.  (Tr. 28, 58).

4

(1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."   *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.   *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."   *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).   *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D.  Specific Errors**

On appeal, plaintiff raises four assignments of error.   First, plaintiff claims the ALJ erred by finding a residual functional capacity for unskilled sedentary work.   Specifically, plaintiff contends the ALJ erred by: splitting the difference between the light exertional work limitations found by the reviewing physicians and the treating physician's limitations; finding that plaintiff had significant improvement with medication; and failing to consider plaintiff's pain under Social Security Ruling (SSR) 96-7p and 20 CFR § 404.1529.   Second, plaintiff claims the ALJ erred at Step 5 of the sequential analysis by relying on faulty VE testimony.   Third, plaintiff argues the ALJ erred in weighing the medical source opinions.   Fourth, plaintiff contends the

5

ALJ erred in discounting plaintiff's credibility.   The Court will first address plaintiff's error

regarding the weight the ALJ afforded to the medical opinions.

      1. <u>The ALJ appropriately weighed the medical opinions of record</u>.

      Plaintiff asserts the ALJ erred by not giving greater weight to the opinions of her treating

physician, Janalee K. Rissover, M.D, a physical medicine and rehabilitation specialist.   Plaintiff

argues that the ALJ's decision to give "very little weight" to Dr. Rissover's August 10, 2011

opinion on plaintiff's physical limitations is not substantially supported because the ALJ: ignored

pertinent evidence; failed to address requisite regulatory factors in assessing the opinion; and did

not provide "good reasons" for discounting the opinion.   (Doc. 8 at 9-11).   For the following

reasons, the Court finds that the ALJ's decision to give less than controlling weight to Dr.

Rissover's August 2011 opinion is supported by substantial evidence.

      It is well-established that the findings and opinions of treating physicians are entitled to

substantial weight.   "In general, the opinions of treating physicians are accorded greater weight

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec'y*,

127 F.3d 525, 530-31 (6th Cir. 1997).   *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference.").   "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th

Cir. 1994).

6

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec'y*, 710 F.3d 365, 376 (6th Cir. 2013) (citing former 20 C.F.R. § 404.1527(d)(2)[3]). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. The ALJ must give "good reasons" for not according controlling weight to a treating physician's opinion. *Wilson*, 378 F.3d at 544. The ALJ must likewise apply the factors set forth in §§ 404.1527(c)(3)-(6) and 416.927(c)(3)-(6) when considering the weight to give a medical opinion rendered by a non-treating source. 20 C.F.R. § 404.1527(c). When considering the medical specialty of a source, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or

---

[3]Titles 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012. The provisions governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d) are now found at §§ 404.1527(c) and 416.927(c).

her area of specialty than to the opinion of a source who is not a specialist."   20 C.F.R. §§
404.1527(c)(5), 416.927(c)(5).

Plaintiff began treating with Dr. Rissover in May 2003.   (Tr. 333-34).   Plaintiff reported
problems with neck pain for about two years prior to this time.   She was found to have a
herniated disc and underwent neck surgery at C5-C6.   Dr. Rissover reviewed an MRI of
plaintiff's cervical spine taken in February 2003 which showed broad disc bulging at C4-C5, but
no problems with the C5-C6 spinal fusion.   (Tr. 348).   Dr. Rissover diagnosed cervical disc
disease with radiculopathy symptoms, but no obvious radiculopathy on examination.   (Tr. 334).
A December 2010 MRI of plaintiff's lumbar spine showed unchanged moderate facet arthropathy
at L4-5 and L5-S1 with no compression abnormality in comparison to a November 2009 MRI.
(Tr. 369).

Treatment records with Dr. Rissover reveal that plaintiff regularly complained of back
and neck pain.  *See*, *generally*, Tr. 295-348, 360-63, 369-73.   Dr. Rissover treated plaintiff's
complaints of back and neck pain with Oxycontin, Percocet, Mobic (Tr. 295), MS Contin (Tr.
360, 362), Meloxicam (Tr. 370), Lyrica (Tr. 370), and Morphine.   (Tr. 373).   In 2003, plaintiff
was referred for objective testing and physical therapy; however, in 2004 she reported not being
able to continue with physical therapy due to her work schedule but was apparently able to return
in 2005.   (Tr. 319, 325, 332, 334).   In June 2009, plaintiff reported that she was not interested in
trying further physical therapy.   (Tr. 299).

On September 16, 2009, Dr. Rissover wrote a letter to plaintiff's employer and opined
that plaintiff was able to work provided that she is able to mostly sit while at work.   Dr. Rissover
further advised that plaintiff be able to "get up and move around and stretch intermittently[,]"

8

and avoid repetitive bending and lifting. Dr. Rissover stated that plaintiff should not lift more than 20 pounds. (Tr. 297).

When seen on January 28, 2010, Dr. Rissover noted plaintiff still had moderate to severe arthritis at two levels in the low back. Dr. Rissover found that plaintiff "has been significantly better since she went off work. She actually seems quite surprised at how much improvement has been noticed since she went off work. She is able to join an aquatic exercise class and has been losing weight. She is under significantly less stress. Her pain levels are better. We discussed possibly staying off work permanently versus trying to find part-time work." (Tr. 295). Dr. Rissover noted plaintiff was walking with a cane due to severe left leg pain in November 2010. (Tr. 372). In March 2011, plaintiff stated that a trigger point injection helped for two and a half weeks. (Tr. 371) Plaintiff rated her pain at a level of 8 on a 0-10 visual analog scale. (Id.).

On August 10, 2011, Dr. Rissover completed an assessment of plaintiff's work related abilities and limitations. Dr. Rissover opined plaintiff could sit intermittently for two hours in an eight-hour workday, and stand or walk for 45 minutes at one time before requiring a rest or an alternative position in an eight-hour workday. Plaintiff could not lift and/or carry, push/pull, stoop, kneel or crouch. Dr. Rissover also found that plaintiff could only reach for 30 minutes, and handle and finger for 45 minutes. Dr. Rissover noted that plaintiff has mild/moderate impairments and significant lumbar arthritis. Dr. Rissover concluded that plaintiff would miss over four days of work a month and her impairments were expected to last at least twelve months. (Tr. 374-78).

The ALJ did not give controlling weight to Dr. Rissover's 2011 opinion, finding that it was "not well supported by her own records . . . [and] not well supported by the medical evidence and is not consistent with other substantial evidence. . . ."[4]  (Tr. 25).  The ALJ then provided his rationale for affording the opinion "very little weight," citing to a lack of objective evidence in Dr. Rissover's treatment notes supporting the extreme limitations.  As an example, the ALJ noted that while Dr. Rissover opined that plaintiff needed to lie down for one hour out of an eight-hour work day and elevate her legs for six hours out of an eight-hour work day (Tr. 375), there was no reference to such limitations in any of her treatment notes.  (Tr. 25).  The ALJ acknowledged that treatment notes from April 2010 demonstrated that for insurance-related reasons plaintiff was without OxyContin, her pain medicine, and had been laying on the couch for four days; however, notes from three days later show that she was able to resume OxyContin and appeared to have resumed her exercise routine.  (Tr. 25, citing Tr. 361, 373).  The ALJ further supported his determination to give Dr. Rissover's opinion reduced weight by citing to inconsistencies between the limitation that plaintiff could do no lifting or carrying and Dr. Rissover's 2009 opinion that plaintiff could lift up to 20 pounds.  (Tr. 25, citing 297, 375).

Plaintiff's argues that the ALJ erred in giving this opinion "very little weight" by: (1) failing to analyze the opinion as required under 20 C.F.R. 404.1527(c)(2); and (2) failing to cite to the objective MRI evidence (Tr. 295, 420) and the fibromyalgia diagnosis (Tr. 18) which supports Dr. Rissover's 2011 limitations.  In her reply, plaintiff further contends that the methodology employed by the ALJ is erroneous as it runs contrary to the recent Sixth Circuit Court of Appeals decision in *Gayheart*, 710 F.3d 365.  The undersigned finds that the ALJ's

---

[4]"Significant weight" was given to Dr. Rissover's 2009 opinion.  (Tr. 25).  As plaintiff's assignment of error addresses only the 2011 opinion, the 2009 opinion will be discussed further *infra* with regard to the ALJ's RFC

determination complies with the relevant law and regulations and is supported by substantial evidence of record.

First, contrary to plaintiff's assertion that *Gayheart* stands for the proposition that the ALJ is to "apply a more rigorous standard of review to non-examining doctors versus treating doctors" (Doc. 16 at 2), a review of this decision reveals that it merely reinforces Sixth Circuit precedent[5] that the Social Security regulations require two distinct analyses and standards in assessing the opinions of treating physicians.  In *Gayheart*, the Sixth Circuit reiterated that the ALJ is to first consider whether the treating physician's opinion is entitled to controlling weight. *Gayheart*, 710 F.3d at 376.  Only after making this determination, should the ALJ engage in the factor-based analysis set forth in 20 C.F.R. § 404.1527(c)(2-6).  *Id.*  Here, the ALJ did precisely that.  The ALJ first determined that Dr. Rissover's 2011 opinion was not entitled to controlling weight because of a lack of evidentiary support and inconsistency with other substantial record evidence.  (Tr. 25).  Following this initial determination, the ALJ engaged in the § 404.1527(c) analysis and gave the opinion "very little weight," as it was not supported by the treatment notes and inconsistent with Dr. Rissover's 2009 opinion.  (*Id.*).  The ALJ determined that Dr. Rissover's manipulative limitations were unsupported by the objective medical evidence as a nerve conduction study found no evidence of carpal tunnel, neuropathy, or significant radiculopathy, and was normal except for muscle spasm.  (*Id.* citing Tr. 328).  Further, the ALJ noted that Dr. Rissover had infrequently treated plaintiff since 2009, accurately describing the treatment relationship as follows: "[a]fter the [plaintiff] stopped working in December 2009, the

_____

formulation.
[5]*See Rogers*, 486 F.3d at 242; *Blakley*, 581 F.3d at 406-07; and *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[plaintiff] visited Dr. Rissover only every 2 to 3 months for medication refills." (Tr. 26). The ALJ also noted that Dr. Rissover's opinion was based in part on plaintiff's fibromyalgia condition, but as a rehabilitation doctor, this rheumatologic disorder was outside the area of her expertise. (*Id.*). Given the above, the undersigned finds that the ALJ did not err under *Gayheart* or § 404.1527(c) in weighing Dr. Rissover's 2011 opinion.

Second, plaintiff's assertion that the ALJ failed to cite to the MRI evidence or account for plaintiff's fibromyalgia is contradicted by the ALJ's decision. The ALJ directly addressed the MRI evidence and fibromyalgia condition during the discussion of Dr. Rissover's opinion. *See* Tr. 26. The ALJ noted that while "the MRI of lumbar spine showed moderate facet arthropathy, there was no compressive abnormality and the MRI was unchanged from the previous MRI indicating stability." (Tr. 26, citing Tr. 369). Further, as noted above, the ALJ acknowledged plaintiff's fibromyalgia condition in finding that it was an impairment outside of Dr. Rissover's specialization. (Tr. 26). The ALJ also discussed plaintiff's fibromyalgia throughout the decision and considered its effect on plaintiff's limitations in formulating her residual functional capacity (RFC). (Tr. 19, 20, 22). The undersigned, therefore, cannot agree with plaintiff's assertion that the ALJ erred by failing to consider this evidence in weighing Dr. Rissover's opinion. As the record reflects that the ALJ engaged in a proper analysis in weighing this opinion, including consideration of the relevant medical evidence and regulatory factors, the ALJ's decision to give "very little weight" to Dr. Rissover's 2011 opinion is substantially supported.

Plaintiff's second argument relates to the nonexamining state agency doctors' opinions.

12

W. Jerry McCloud, M.D., reviewed the file on April 15, 2010, and completed a physical residual functional capacity assessment.   (Tr. 349-56).   He opined that plaintiff could lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about six hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday.   (Tr. 350).   Dr. McCloud deemed plaintiff's allegations to be credible.   (Tr. 354). This opinion was affirmed on September 1, 2010, by state agency physician, Leigh A. Thomas, M.D.   (Tr. 367).   In July 2010, Nick Albers, a reviewer for the Ohio Bureau of Disability Determination, noted that plaintiff's pain varied daily, with "good" and "bad" days.   According to Mr. Albers, plaintiff alleged that she could sit one hour, stand 20 minutes, and walk 30 minutes on a good day.   (Tr. 364-65).

Plaintiff's asserts that the ALJ erred by giving "significant weight" to the opinions of the nonexamining state agency doctors who found plaintiff's allegations to be credible, but not finding that plaintiff was disabled.   (Doc. 8 at 9).   Plaintiff appears to contend that because these doctors found plaintiff's allegations to be credible given her diagnosed medical conditions (Tr. 354, 367), and because plaintiff alleged she could walk for 30 minutes, stand for 20 minutes, and sit for an hour on a "good day" (Tr. 364), the ALJ should have found plaintiff disabled because she would be unable to perform the sedentary work identified by the VE with these limitations.   Plaintiff's argument is unavailing.

Plaintiff fails to recognize that while the nonexamining state agency doctors found plaintiff's complaints of pain to be credible, they nonetheless determined that she was able to engage in physical activities in excess of what plaintiff alleged.   For example, plaintiff alleged she could only sit for an hour on a "good day" (Tr. 364), but Dr. McCloud opined that she would

13

be able to sit for about six hours. (Tr. 350). Thus, while Dr. McCloud found plaintiff credible to the extent that the medical evidence supported her allegations that she had physical limitations, he did not find that plaintiff was as physically limited as she alleged. Plaintiff has failed to cite to any evidence demonstrating that the state agency's doctors opined that she was disabled; moreover, the ALJ gave plaintiff the benefit of the doubt and afforded her greater limitations in his RFC formulation than those provided by the nonexamining state agency physicians. *Compare* Tr. 19 *with* Tr. 350. The ALJ was not required to find plaintiff disabled based solely on her allegations of her physical abilities despite the fact that she was deemed credible by these doctors. The undersigned therefore finds that the ALJ's decision to give "significant weight" to the nonexamining state agency physicians is supported by substantial evidence.

    2. The ALJ's RFC formulation is supported by substantial evidence.

    Plaintiff identifies six discrete ways in which the ALJ erred in formulating her RFC. Plaintiff asserts the ALJ erred by: (1) improperly characterizing plaintiff's response to medication as a significant improvement; (2) failing to consider the fact that plaintiff's pain decreased when she was not working; (3) describing plaintiff's treatment as "relatively conservative"; (4) mischaracterizing the nature of plaintiff's physical activity, namely, swimming; (5) not accounting for plaintiff's use of a cane; and (6) creating an RFC that split the difference between those provided by Dr. McCloud and Dr. Rissover. For the reasons that follow, plaintiff's assignment of error should be overruled as the Court finds that the ALJ's RFC formulation is supported by substantial evidence. Plaintiff's arguments will be addressed in turn.

14

First, plaintiff asserts the ALJ erred by stating that plaintiff had "significant improvement with medication." (Doc. 8 at 4, citing Tr. 23). In support of her contention that the ALJ did not accurately describe her response to treatment, plaintiff cites to: (1) a March 2, 2011 treatment note wherein it was noted that plaintiff reported that the "trigger point injection . . . helped for almost 2 ½ weeks, but then wore off"; and (2) an April 8, 2010 treatment note from Dr. Rissover that provides that "[t]he Mobic . . . seems to be helping slightly. [Plaintiff] has noticed that she is less stiff. Certainly, she has significantly increased symptoms if she goes without the Mobic." (Tr. 362, 371). The undersigned fails to see the distinction between the ALJ's description of plaintiff reporting significant improvement with Mobic and Dr. Rissover's note finding that plaintiff has significantly more symptoms without Mobic. Moreover, plaintiff testified that Mobic is effective in relieving her pain and permits her to function unless she is experiencing great pain. *See* Tr. 41. The Court thus finds that the ALJ did not err in stating that Mobic provided plaintiff with significant pain improvement.

Regarding the branch blocks, the ALJ stated that plaintiff "reported a 70% improvement with lumbar medial branch blocks . . . ." (Tr. 23, citing Tr. 275). The August 27, 2009 medical record entitled "Lumbar-Sacral Medial-Lateral Branch Blocks" provides that plaintiff described her initial branch blocks as "helpful" and that she "experienced a 70% improvement and three hours relief of pain." (Tr. 275). A September 4, 2009 treatment note includes similar reports. (Tr. 277). Plaintiff is correct that in describing plaintiff's 70% improvement with the branch blocks, the ALJ did not reference the treatment note from Dr. Rissover which reflects that this procedure was effective in alleviating her pain for less than three weeks. The ALJ's oversight in this regard, however, is not reversible error. Notably, the ALJ's discussion of the branch blocks

is contained within the portion of his decision related to the credibility finding and not his discussion of the medical evidence forming the basis of his RFC formulation. The undersigned further notes that the ALJ's recitation of this evidence is accurate insofar as plaintiff reported a 70% improvement. The ALJ is not required to "discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004). Rather, the requirement is that the evidence be considered and, here, the ALJ's thorough discussion of the record evidence, such as noting plaintiff's testimony that her epidural injections were only helpful for two week periods, *see* Tr. 20, reflects that the ALJ properly considered the relevant record evidence in formulating plaintiff's RFC.

Second, plaintiff asserts the ALJ erred by not addressing the other methods employed by plaintiff to deal with her pain, citing to a January 2010 treatment note from Dr. Rissover which includes plaintiff's reports of significant improvement since she has stopped working. (Doc. 8 at 4-5, citing Tr. 295). In assessing plaintiff's allegations of pain, the ALJ is required to consider, *inter alia*, "what mediations, treatments or other methods" plaintiff employs to deal with her symptoms. 20 C.F.R. § 404.1529. A review of the ALJ's decision reveals that despite plaintiff's assertion, the ALJ properly considered evidence of methods used by plaintiff to alleviate her pain. The ALJ noted that to treat her pain, plaintiff took medications; received epidural steroid injections, nerve blocks, and radiofrequency neuroablation; participated in physical therapy; shifted positions and elevated her legs; used a cane; and laid down daily. (Tr. 20-21). Though plaintiff argues the ALJ did not consider the evidence from Dr. Rissover that her pain eased when she stopped working, the ALJ cited to this treatment note in his discussion of plaintiff's activities of daily living. *See* Tr. 21. As stated above, it is only required that the

16

ALJ consider the relevant evidence; he need not discuss every item in detail. *See Thacker*, 99 F. App'x at 664. As it is clear that this evidence was considered by the ALJ, the Court finds no error in this regard.

Third, plaintiff contends the ALJ erred in classifying the treatment for her various impairments, such as taking narcotic medications and receiving invasive injections, as "relatively conservative." (Doc. 8 at 5, citing Tr. 24). In terms of medical care, it is proper to classify taking prescription medications and receiving injections as "conservative" treatment. Indeed, the treatment notes from plaintiff's pain specialist, Sun Min, M.D., provide that plaintiff "has tried and failed *conservative* measures such as heat, rest, ice, NSAIDS, physical therapy, prior *injections* and a TENS unit." (Tr. 271) (emphasis added). *See also Carmen v. Astrue*, No. 10-372, 2011 WL 4345731, at *3 (E.D. Ky. Sept. 15, 2011) (describing injections as "conservative treatment" in comparison to surgery); *Cordell v. Astrue*, No. 4:09-cv-19, 2010 WL 446944, at *7, 12, 15 (E.D. Tenn. Feb. 2, 2010) (narcotic pain medication such as Percocet and psychotropic medications are "conservative treatment"). Consequently, the ALJ's classification of this treatment as conservative was not erroneous.

Fourth, plaintiff argues that the ALJ erred when he mentioned that plaintiff was swimming by failing to note that it was prescribed aquatic therapy. (Doc. 8 at 5). There is no evidence in the record to support plaintiff's contention that her swimming was "prescribed aquatic therapy." The treatment notes plaintiff cites to in support of this assertion include a January 28, 2010 note from Dr. Rissover which provides that plaintiff "is able to join an aquatic exercise class" (Tr. 295) and a May 12, 2011 note providing that plaintiff planned to open her

17

pools soon. (Tr. 370). Without any evidence supporting plaintiff's assertion that this was prescribed activity, the Court cannot conclude the ALJ erred in this regard.

Fifth, plaintiff claims the ALJ erred by not accounting for the use of a cane in formulating the RFC. Plaintiff alleges that she requires a cane to walk and would have difficulty holding onto a cane while standing for two hours.[6] The only medical evidence cited by plaintiff regarding her cane use is a November 30, 2010 treatment note wherein Dr. Rissover noted that plaintiff was "walking with a cane because of pain in the left leg is so severe." (Tr. 372). Plaintiff argues that because Dr. Rissover did not discourage the use of a cane, the ALJ should have accounted for cane use in formulating the RFC.

The ALJ included the following discussion as to plaintiff's cane use: "has used a cane for the last 4 to 5 years. The cane is not prescribed. [Plaintiff] used the cane when she last worked on [a] regular basis and daily during the winter months." (Tr. 21). The ALJ proceeded to find that plaintiff's allegations as to her limitations, including the use of a cane, were not fully credible. (*Id.*). As discussed *infra*, the ALJ's credibility finding is substantially supported by the evidence. Aside from plaintiff's subjective statements (which were deemed not credible), there is simply no evidence supporting her assertion that the ALJ was required to include an accommodation for cane use in formulating the RFC. While Dr. Rissover did not instruct plaintiff to *not* use the cane, there is no opinion from her or any other medical source mandating the use of a cane to stand or walk. The Court declines to adopt plaintiff's view that Dr. Rissover's observation of plaintiff's cane use is an implicit prescription for same. Plaintiff has failed to meet her burden of establishing that she requires the use of a cane, *Rabbers*, 582 F.3d at

---

[6]The ALJ determined that plaintiff had the RFC for sedentary work, which includes standing and walking for two hours in an eight-hour workday, with additional limitations. *See* Tr. 19. *See also* 20 C.F.R. § 404.1567.

652, and the ALJ did not err by not including an accommodation for cane use in formulating the RFC.

Sixth, plaintiff argues the ALJ erred by finding that she was capable of performing sedentary work with additional limitations because no medical opinion supports this RFC. (Doc. 8 at 6). Plaintiff notes that Dr. Rissover opined that her physical limitations precluded her from performing any work while the nonexamining state agency doctors opined that plaintiff could perform a limited range of light work. (*Id*. citing Tr. 349-56, 374-78). Plaintiff asserts that the ALJ improperly "split the difference" between these medical opinions and, in essence, created his own medical opinion in formulating an RFC for sedentary work. For the following reasons, the undersigned finds that the ALJ did not improperly create his own medical opinion in assessing plaintiff's RFC.

As discussed above, the ALJ gave Dr. Rissover's August 2011 functional capacity assessment "very little weight," but gave "significant weight" to her September 2009 opinion that plaintiff could work provided that she be allowed to sit most of the time, intermittently stretch, avoid repetitive bending and lifting, and not lift more than 20 pounds. (Tr. 25-26). The ALJ stated that his RFC assessment accounted for Dr. Rissover's September 2009 restrictions by limiting her to sedentary work with occasional stooping. (Tr. 26). The ALJ explained that while he gave "significant weight" to the nonexamining state agency opinions providing that plaintiff could perform light work, he was reducing plaintiff's RFC from light to sedentary primarily based on Dr. Rissover's September 2009 opinion. (Tr. 26-27). The ALJ's decision demonstrates that he formulated plaintiff's RFC by adopting the portions of these medical opinions which he deemed reasonable in light of the record medical evidence.

19

Plaintiff relies on *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009), in asserting

that the ALJ improperly "split the difference" between the medical opinions. (Doc. 8 at 6).

The undersigned finds that *Hensley* is distinguishable from the instant case. There, the ALJ was

faced with two contrasting medical opinions – one doctor opined that the plaintiff "could not

engage in repetitive pushing and pulling [and] another physician had reached the opposite

conclusion." *Hensley*, 573 F.3d at 266. The ALJ found that the plaintiff could "occasionally"

engage in pushing and pulling – "a standard that neither physician had adopted." *Id*. The Sixth

Circuit noted that the ALJ gave no explanation for this conclusion and remanded the matter. *Id*.

at 267. Notably, the remand related to the ALJ's failure to provide "good reasons" for rejecting

the opinion of the treating physician and not for "splitting the difference" in creating the RFC for

occasional pushing and pulling.

Here, unlike in *Hensley*, the ALJ explained his decision for concluding that plaintiff was

capable of sedentary work with restrictions when he stated that he reduced plaintiff's RFC from

light to sedentary work based on Dr. Rissover's September 2009 opinion. Because the ALJ

reasonably relied on Dr. Rissover's opinion in formulating the RFC for sedentary work, *Hensley*

is inapt. Moreover, plaintiff's argument that the ALJ "split the difference" between the medical

opinions of record ignores the existence of Dr. Rissover's 2009 opinion and the ALJ's

explanation that his RFC formulation was predicated upon it.

For the above reasons, plaintiff's second assignment of error should be overruled.

3. The ALJ did not err at Step Five of the sequential evaluation process.

Plaintiff contends the ALJ erred at Step Five of the sequential evaluation process by

relying on the Dictionary of Occupational Titles (DOT) rather than consulting a more updated

publication. (Doc. 8 at 7-9, citing *Cunningham v. Commissioner*, 360 F. App'x 606, 615-16 (6th Cir. 2010)). Plaintiff contends the VE's testimony that plaintiff could perform unskilled jobs as an addresser, telephone clerk, or document preparer (Tr. 58) is inaccurate because it was based on the purportedly outdated DOT. Plaintiff asserts that more current vocational information - the Occupational Information Network (O*NET) – reflects that the jobs identified by the VE require skill levels exceeding those permitted for unskilled work. *See* SSR 00-4p, 2000 WL 1898704, at *3 (2000) (unskilled work corresponds to a specific vocational preparation (SVP) of 1-2).

Plaintiff submitted the following O*NET job descriptions to the ALJ following the administrative hearing: word processor and typist; switchboard operators, including answering service; telephone operators; office clerk, general; file clerks; and word processor and typist (Tr. 223-261), all of which have SVP ratings of 4 or above. In rejecting plaintiff's argument, the ALJ stated:

> Finally, I note that the [plaintiff]'s representative submitted descriptions of the jobs the [VE] identified from a publication ONET and claims, based on his review of the job descriptions, that they are performed at an SVP level 4 or higher, which is inconsistent with a limitation to unskilled work (Ex. 20E). However, I find nothing in the submissions by the [plaintiff]'s representative to question the validity of the [VE]'s testimony. The regulations expressly allow me to rely on such testimony, and publications like the [DOT], to determine whether jobs exist that match a [plaintiff]'s vocational profile and [RFC]. As I stated at the hearing, I limited the [plaintiff] to simple, routine, repetitive work, and included this limitation in my hypothetical question to the [VE], on the basis of the [plaintiff]'s purported medication side effects, which she reported in a form submitted by her representative before the hearing (Exhibit 19E). However, post hearing evidence submitted from the [plaintiff]'s physician makes clear that such alleged side effects have been virtually non existent since at least September 2011 (Exhibit 9F). Otherwise, there is no indication in the record that the [plaintiff] would be mentally incapable of performing the jobs the [VE] identified, whether as described in the DOT, or the ONET. All of the jobs that the [VE] identified are contain (sic) a [SVP] of 2, consistent with unskilled work.

21

(Tr. 29).

The ALJ's decision in this regard is substantially supported. Plaintiff has not shown that the addresser, telephone clerk, or document preparer job descriptions in the DOT are obsolete so as to render the VE's testimony on this matter unreliable. *Cf. Cunningham*, 360 F. App'x at 615 ("While the Social Security Commissioner does take administrative notice of [the DOT] when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted."). Although the Sixth Circuit in *Cunningham* "suggested that the particular DOT job descriptions at issue . . . may have been obsolete, it did not hold that the DOT is an unreliable or out-of-date source." *Horsley v. Comm'r of Soc. Sec.*, No. 1:11-cv-703, 2013 WL 980315, at *3 (S.D.Ohio March 13, 2013) (Barrett, J.) (quoting *Earls v. Comm'r of Soc. Sec.*, 1:09-cv-01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug. 19, 2011)). As explained by the Court in *Horsley*:

> [T]he Occupational Information Network ("O*NET") . . . superseded the DOT as the federal government's primary source of occupational information in 1999. Although considered obsolete by most other federal agencies, the DOT continues to be used extensively by the Social Security Administration, although plans to replace the DOT as the Administration's primary vocational reference source are underway. *See* 73 Fed. Reg. 78864 (Dec. 23, 2008). In the meantime, however, SSR 00-4p continues to require consistency between vocational expert testimony and the DOT.

*Horsley*, 2013 WL 980315, at *3 (quoting *Ricard v. Astrue*, 1:09-08, 2009 WL 5031317, at *9 (M.D. Tenn. Dec. 14, 2009)). Here, the ALJ complied with SSR 00-4p when he asked the VE whether her testimony was consistent with the DOT. (Tr. 58). Plaintiff was given the opportunity to cross-examine the VE and did not challenge the VE's testimony when she confirmed that the jobs she identified were all unskilled. (Tr. 59). The ALJ was permitted to

22

rely on the VE's testimony "given the VE's ability to tailor her finding to an 'individual's particular residual functional capacity.'" *Beinlich v. Comm'r of Soc. Sec.,* 345 F. App'x 163, 168 (6th Cir. 2009) (quoting *Wright v. Massanari,* 321 F.3d 611, 616 (6th Cir. 2003) and citing SSR 00-4p (noting that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT.")).

Lastly, to the extent plaintiff argues that the VE should not be considered an "expert" because she "did not know the total number of jobs in Ohio or the United States" despite being based out of Ohio (Doc. 8 at 8-9, citing Tr. 56, 60), this argument is not well-taken.   That the VE was not able to identify the total number of jobs in Ohio is irrelevant to her ability to identify jobs in significant numbers in the national economy that plaintiff is capable of performing. Moreover, plaintiff's failure to challenge the credentials of the VE at the hearing amounts to a waiver.  *See Koller v. Astrue,* No. 2:10-284-DCR, 2011 WL 5301569 (E.D. Ky. Nov. 3, 2011) (citing *Ischay v. Barnhart,* 383 F. Supp.2d 1199, 1222 n.15 (C.D. Cal. 2005) ("If a party fails to object to an expert's qualifications at the hearing, he waives the right to challenge them.")).

For the above reasons, the undersigned finds that the ALJ did not err at Step Five of the sequential evaluation process.

4. The ALJ did not err in evaluating plaintiff's credibility.

For her final assignment of error, plaintiff contends the ALJ erred in discounting her credibility.   Plaintiff asserts (1) the ALJ's credibility analysis is reversible "meaningless boilerplate" language; (2) the ALJ improperly characterized plaintiff's activities of daily living;

(3) the ALJ is inconsistent regarding his discussion of plaintiff's physical therapy; (4) the ALJ

erroneously stated that plaintiff's reported medication side effects were not supported by the

record; (5) the ALJ erred by not agreeing with the nonexamining state agency doctors' opinions

that plaintiff had "good" and "bad" days with regard to her pain level; and (6) the ALJ erred by

not considering plaintiff's solid work record.   (Doc. 8 at 12-13).   Plaintiff argues that the ALJ

should have deemed her testimony credible and found her disabled.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant.   *Rogers*, 486 F.3d at 247 (citations omitted).   In light

of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's

credibility finding is entitled to deference and should not be discarded lightly.   *Buxton v. Halter,*

246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538.   "If an ALJ rejects a claimant's

testimony as incredible, he must clearly state his reasons for doing so."   *Felisky v. Bowen,* 35

F.3d 1027, 1036 (6th Cir. 1994).   The ALJ's articulation of reasons for crediting or rejecting a

claimant's testimony must be explicit and "is absolutely essential for meaningful appellate

review."   *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v.*

*Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible

or intuitive notion about an individual's credibility."   *Rogers,* 486 F.3d at 247.   Rather, such

determination must find support in the record.   *Id.*   Whenever a claimant's complaints regarding

symptoms or their intensity and persistence are not supported by objective medical evidence, the

ALJ must make a determination of the credibility of the claimant in connection with his or her

24

complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination that plaintiff's subjective statements regarding the severity of her impairments are not credible to the extent they are inconsistent with his finding that she is capable of performing a limited range of sedentary work. In making this determination, the ALJ noted throughout his decision the various ways in which plaintiff's statements were inconsistent and unsupported by the objective and clinical evidence of record.

First, the ALJ observed that plaintiff's activities of daily living as reflected in the record "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 21). To support this finding, the ALJ cited to plaintiff's Function Report where she reported that she was able to manage her personal care; complete chores such as dish washing, dusting, folding laundry and watering plants; prepare simple meals for herself; and shop in stores and online; garden; and regularly attend church. (Tr. 21, citing Tr. 200-04). The ALJ further cited to treatment records wherein plaintiff reported that she had been swimming and "overdoing it in the garden." (Tr. 21-22, citing Tr. 295, 323, 370). The ALJ also noted that there was no evidence in the record supporting plaintiff's allegations that she suffered from leg swelling due to non-movement and needed to elevate her legs. (Tr. 22). Plaintiff argues that the ALJ erred by failing to note the manner in which plaintiff completed these activities, asserting that she does them "at her own pace, with help, and when able." (Doc. 8 at 12). It is

25

true that the ALJ may not selectively reference portions of the record casting plaintiff in a

capable light to the exclusion of those portions which do not.   *Howard v. Comm'r of Soc. Sec.*,

276 F.3d 235, 240-41 (6th Cir. 2002).   In this case, however, the ALJ acknowledged plaintiff's

assertion that she was only able to engage in a limited range of chores "at above the waistline to

avoid bending," but reasonably found this reported limitation to be inconsistent with

a May 12, 2011 treatment note that plaintiff was overexerting herself while gardening.   (Tr. 22,

citing Tr. 370).   The record evidence substantially supports the ALJ's characterization of

plaintiff's activities of daily living and he did not err in this regard.

Second, the ALJ identified multiple inconsistencies between plaintiff's testimony and the

record evidence.   For example, the ALJ noted the following discrepancies: (1) plaintiff testified

that her doctor did not prescribe physical therapy because it was not helpful in controlling her

pain (Tr. 47), but a March 2, 2011 treatment note shows that plaintiff did not wish to consider

physical therapy (Tr. 371)[7]; (2) plaintiff testified on March 26, 2012, that her medications caused

drowsiness (Tr. 41), but she reported to her pain specialist as recently as March 23, 2012, that she

was experiencing no side effects from these medications (Tr. 380-86)[8]; and (3) plaintiff testified

that she did not work overtime at her job (Tr. 39), but reported to Dr. Rissover on November 5,

2009, that she "had been working a lot of overtime" (Tr. 296).   A review of the evidence cited

by the ALJ supports his determination that plaintiff's testimony is contradicted by various other

record evidence.

Third, the ALJ observed that plaintiff's complaints of disabling symptoms were not

---

[7]In this same vein, the ALJ noted that plaintiff refused pursuing further aggressive intervention to address pain associated with her lumbar disease, opting to pursue home exercise instead.   (Tr. 22, citing Tr. 362).
[8]Despite this inconsistency, the ALJ accommodated plaintiff's purported side effects by providing that she avoid hazards and not climb ladders, ropes, or scaffolds in formulating her RFC.   (Tr. 22).   Notably, the ALJ

supported by the objective and clinical evidence. The ALJ noted that during plaintiff's prior employment as a human resources manager, she performed work above the sedentary level and in excess of her work restrictions and during this time she exhibited only moderate findings. (Tr. 23, citing Tr. 266-70). She had largely normal findings in September 2011 aside from a positive Yeoman's/Gaenslen's test indicating that plaintiff experienced pain during the test and indicating a sacroiliac joint strain (Tr. 387-89), and a December 2010 MRI showed moderate facet arthropathy at L4-5 and L5-S1 which was unchanged from a prior MRI, indicating stability as well as no evidence of foraminal stenosis. (Tr. 345). In consideration of this evidence, the ALJ reasonably determined that the objective medical evidence and the treatment record did not provide strong support for plaintiff's allegations of disabling symptoms. (Tr. 23).

Plaintiff also argues that the ALJ's finding is "meaningless boilerplate" language which does not substantially support his credibility finding. In support of this position, plaintiff cites to *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010), in which the Seventh Circuit held that boilerplate language similar to that employed by the ALJ was not sufficiently detailed to provide the reviewing court with the grounds upon which the RFC determination was based. However, the ALJs in the *Parker* case "failed to mention highly pertinent evidence [and/or] fail[ed] to build a logical bridge between the facts of the case and the outcome." *Id*. at 921. Their determinations were overturned, not for the use of boilerplate language, but because, in addition, the decisions were fundamentally flawed as one ALJ failed to properly consider the cumulative effects of impairments and the other completely ignored pertinent evidence contained in a

---

observed that despite her complaints of drowsiness, plaintiff continued to drive her children to and from school. (*Id.*).

27

treating physician's notes. *Id.* at 923-25. These blatant deficiencies are not present in the instant determination.

The Court agrees that the boilerplate language cited by the ALJ is virtually meaningless. Nevertheless, in this case the boilerplate language is followed by a detailed basis for the ALJ's credibility determination and, therefore, a sufficient record exists upon which this Court can determine whether or not the ALJ's determination is supported by substantial evidence. As plaintiff has not cited to any regulatory credibility factors the ALJ failed to consider, the Court declines to find error in the use of this boilerplate language.

Although plaintiff also takes issue with the ALJ's failure to note her "good and bad" days and strong work history, the ALJ's credibility determination should be affirmed because he otherwise considered plaintiff's subjective complaints in light of the record as a whole and adequately explained his decision, with citations to the record, to not fully credit plaintiff's alleged limitations. *See Infantado v. Astrue*, 263 F. App'x 469, 476 (6th Cir. 2008). The ALJ cited to objective and clinical evidence, plaintiff's inconsistent statements, and plaintiff's activities of daily living in support of his finding that plaintiff's subjective allegations were not fully credible. Given the evidence discussed above and the deference due to the ALJ in making credibility determinations, the undersigned concludes the ALJ's credibility finding is substantially supported by the record and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and that this matter be closed on the docket of the Court.

Date: _1/6/2014_

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge

28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

LISA A. HAUSER,
     Plaintiff,

    vs

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

Case No. 1:12-cv-796
Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).